LAWRENCE W. POTTS *et al.* School Directors,

*v.*

JENNIE BREEN *et al.*

*Filed at Mt. Vernon May 10, 1897.*

1. STATE BOARD OF HEALTH—*construction of act of 1877 creating.* Section 2 of the act creating the State Board of Health, (Laws of 1877, p. 208,) which provides that such board shall have supervisory power over "the interests of the health and lives" of citizens, must be construed in relation to the specific duties imposed and powers conferred upon the board by the act, taken as a whole.

2. SAME—*supervisory power of board must be exercised in conformity to law.* The general supervisory power of the State Board of Health over the health and lives of citizens must be exercised in conformity to law, and is confined, within reasonable limits, to the administrative duties imposed upon the board by statute.

3. SAME—*limitation upon power of board to make rules concerning public health.* The power conferred by statute upon the State Board of Health to make rules and regulations for the preservation or improvement of the public health, does not authorize such board to prescribe conditions under which citizens may exercise rights and privileges guaranteed by public law.

4. VACCINATION—*laws of Illinois do not require vaccination of children as condition precedent to attending school.* The laws of Illinois give to every child in the State of proper age the right to attend public schools, and there is no provision which requires vaccination as a condition precedent to the exercise of that legal right.

5. SAME—*power to compel vaccination is derived from the general police power of the State.* The power to compel the vaccination of children as a prerequisite to their attending public schools can be derived only from the general police power of the State, and can be justified only as a necessary means for preserving health.

6. SAME—*when rule compelling vaccination is unreasonable.* A rule adopted by the State Board of Health compelling the vaccination of children as a prerequisite to their attending public schools, is unreasonable where small-pox does not exist in the community, and there is no reasonable cause to apprehend its appearance.

7. SAME—*school directors cannot exclude children from school because not vaccinated, except in emergency.* School directors have no right, either under their own rules or by order of the State Board of Health, to exclude from public schools children refusing to be vaccinated, unless such course is necessary, or reasonably appears to be necessary, to prevent the appearance or spread of small-pox.

*School Directors* v. *Breen,* 60 Ill. App. 201, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Lawrence county; the Hon. S. Z. LANDES, Judge, presiding.

GEE & BARNES, for appellants.

C. J. BORDEN, and C. F. BREEN, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Two suits between the same parties were begun,—one a petition for a writ of *mandamus* to compel appellants to admit appellees to the public school of their district, and the other an action of trespass to recover damages for the exclusion of appellees from such school. The cases were tried together upon the following facts agreed upon, viz.: Jennie Breen and Jim Breen, appellees, were the children of Michael Breen, a resident and tax-payer of district No. 5, township 2, range 12, in Lawrence county, Illinois, of which district the appellants were directors. These directors, acting under a certain rule and order of the State Board of Health, made a general order, applicable to all schools in their district, requiring that all pupils should be vaccinated before being admitted to such schools. They also employed a physician to vaccinate the pupils, and instructed and ordered the teacher of the school in question to impart no instruction to appellees until they should comply with said order, and appellees were refused admission to the school on the sole ground that they had failed and refused to comply with such order, the father of appellees absolutely refusing to permit his children to be vaccinated. The directors acted in good faith, under the belief that they were performing a duty imposed upon them by law, and used no direct force upon appellees, but simply denied them admission to the school after repeated refusals to obey the orders relating to vaccination.

In their answer to the petition the directors alleged that the State Board of Health made and promulgated the following order:

"*Resolved*, That by the authority vested in this board, it is hereby ordered that on and after January 1, 1882, no pupil shall be admitted to any public school in the State without presenting satisfactory evidence of proper and successful vaccination."

And that at the January meeting, 1894, the said State Board of Health passed the following resolution:

"*Resolved*, That the power of the State Board of Health, under the law creating said board of health, to order the vaccination of all school children, is clear and unquestionable. The consequent duty of the board of school directors to see that such order is strictly enforced in their respective districts is equally clear, and the said order of the board of health is their sufficient authority for so doing."

These orders of the State Board of Health were sent to the superintendent of schools of said Lawrence county, and were by him transmitted to the appellants, with written directions of the State Board of Health to enforce the same, and appellants made an order that all children attending the said school in their district should be vaccinated, or should show a physician's certificate of previous vaccination, as a condition of attendance upon the said school.

The trial court rendered judgment against appellants, granting the peremptory writ of *mandamus* as prayed, and assessed appellees' damages in the trespass case at one cent. These judgments have been affirmed, on appeal, by the Appellate Court, and appellants have prosecuted this appeal to this court.

So far as the record discloses, appellees had not been exposed to infection by small-pox but were in perfect health, and there was no reason for their exclusion except that they had not been vaccinated. There was no epidemic of small-pox prevailing or apprehended in the vicinity of the school. The record presents the question whether or not the State Board of Health, or the appel-

lants, as such school directors, acting under its order or otherwise, had any power to impose as a condition of the admission of appellees to the public schools the requirement of vaccination; and further, if such power existed and could be enforced as a police regulation for the preservation of the public health and to prevent the spread of contagious and infectious diseases, was the regulation and its enforcement, under the facts appearing in the record, reasonable.

Section 2 of the act creating the Board of Health (Laws of 1877, p. 208,) is as follows: "The State Board of Health shall have the general supervision of the interests of the health and life of the citizen of the State. They shall have charge of all matters pertaining to quarantine, and shall have authority to make such rules and regulations, and such sanitary investigations, as they may, from time to time, deem necessary for the preservation or improvement of public health; and it shall be the duty of all police officers, sheriffs, constables, and all other officers and employees of the State, to enforce such rules and regulations, so far as the efficiency and success of the board may depend upon their official co-operation." Section 3 provides: "The board of health shall have supervision of the State system of registration of births and deaths, as hereinafter provided. They shall make up such forms and recommend such legislation as shall be deemed necessary for the thorough registration of vital and mortuary statistics throughout the State. The secretary of the board shall be the superintendent of such registration." Section 4 makes it the duty of all physicians and accouchers to report to the county clerk "all births and deaths which may come under their supervision, with a certificate of the cause of death, and such correlative facts as the board may require, in the blank forms furnished as hereinafter provided." Section 8 requires county clerks to render complete reports of all births, marriages and deaths to the board of health, and

section 9 requires the board of health to prepare the necessary forms. Section 12 provides for an annual report by the board to the Governor, "and such report shall include so much of the proceedings of the board and such information concerning vital statistics, such knowledge respecting diseases, and such instruction on the subject of hygiene, as may be thought useful by the board for dissemination among the people, with such suggestions as to legislative action as they may deem necessary." By reference, also, to the act of the General Assembly to regulate the practice of medicine in this State, which was passed at the same session of the legislature and which makes reference to the State Board of Health, and provides for the examination and licensing by said board of persons desiring to practice medicine, it clearly appears that one of the most important duties of the board was to ascertain and certify to the qualifications of practicing physicians and surgeons, and to detect quacks, and to prevent them and all ignorant pretenders from imposing upon the sick and helpless.

It is clear that no such power as claimed by the State Board of Health has been conferred upon it, unless by the broad and general language of the first section of the act creating it. But the general terms there employed must be construed in relation to the more specific duties imposed and powers conferred by the act taken as a whole, and when thus construed these general terms are restricted so as to express the true intent and meaning of the legislature. Take, for example, the first sentence, viz.: "The State Board of Health shall have the general supervision of the interests of the health and life of the citizen of the State." The scope of the language there employed is practically unlimited, and were it not held to be restricted by well-known legal principles applicable in the interpretation and construction of statutes, it would appear to confer more power on this board than the legislature itself possessed. Plainly, it

was not intended that any general supervisory power over the health and lives of citizens of the State should be exercised by the board otherwise than in conforming to law, and such as should be necessary, within reasonable limitations, in the performance of the administrative duties which were or should be imposed upon the board by statute. It had and could have no legislative power. Its duties were purely ministerial, and the provision of the statute authorizing the board to make such rules and regulations as it should, from time to time, deem necessary for the preservation or improvement of the public health, cannot be held to confer that broad discretionary power contended for,—to prescribe conditions upon which the citizen of the State may exercise rights and privileges guaranteed to him by public law.

In *Huesing* v. *City of Rock Island,* 128 Ill. 465, it was contended that the city had the power, under clause 78 of section 1, article 5, of the City Incorporation act, to construct and maintain a city abattoir, as a sanitary measure. This clause is as follows: "To do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease." This court, however, held that, in view of the fact that the same section contained other provisions authorizing the city council to do certain specified acts for the preservation of the health of the city and the suppression of disease, the general provision did not enlarge the powers conferred by the special provisions.

As recently held by the Supreme Court of Wisconsin in a similar case, we are of the opinion that the powers of the board are limited to the proper enforcement of statutes, or provisions thereof, having reference to emergencies requiring action on the part of the agencies of government to preserve the public health and to prevent the spread of contagious or infectious diseases. It will be observed that after the first section the powers and duties of the board with reference to different subjects

are minutely specified, and it is required to make report to the Governor, and to include therein "such information concerning vital statistics, such knowledge respecting diseases and such instruction on the subject of hygiene, as may be thought useful by the board, for dissemination among the people, with such suggestions as to legislative action as they may deem necessary." Its duty to recommend legislation is repeated more than once in the act in connection with specifications of the powers and duties of the board, and from no point of view can we regard it as having been within the legislative intent to confer by the first section plenary powers upon the board in all matters pertaining to the public health, without regard to other provisions of the statute or further action by the legislature.

Section 1 of article 8 of the constitution provides that "the General Assembly shall provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education." And the statute provides that the directors "shall establish and keep in operation for at least one hundred and ten days of actual teaching in each year, * * * a sufficient number of free schools for the accommodation of all children in the district over the age of six and under twenty-one years, and shall secure to all such children the right and opportunity to an equal education in such schools." And the statute further provides that they shall adopt and enforce all rules and regulations for the management and government of the schools, and may suspend or expel pupils who may be guilty of gross disobedience or misconduct. The statute also contains provisions of similar import relating to schools in more populous districts and in cities. It is therefore seen that the right or privilege of attending the public schools is given by law to every child of proper age in the State, and there is nowhere to be found any provision of law prescribing vaccination as a condition precedent to the

exercise of this legal right. Whether the legislature has the power to make such a requirement or not it is not necessary here to consider. It is sufficient that it has not done so. And it cannot be supposed that the legislature has undertaken, and not expressly, but by mere implication from the general language used in creating the State board, to confer upon that mere administrative body such vast power over the rights and liberties of the individual citizen as to deprive him of his constitutional and statutory rights unless he shall submit his body to be inoculated with vaccine virus as a mere precaution. against some possible future contagion of small-pox. It is doubtless true that in a large number of school districts in interior parts of the State no case of small-pox has ever existed in the history of the State, and yet by this order of the board no citizen who has children to educate, although compelled by law to pay taxes to support the public school, can send his child to such school without first having such child vaccinated as a precaution against a disease which had never appeared, and where there was no apparent danger that it would ever appear in the vicinity. The power to compel vaccination, or to require it as a condition precedent to the exercise of some right or privilege guaranteed to the citizen by public law, can be derived from no other source than the general police power of the State, and can be justified upon no other ground than as a necessary means of preserving the public health. Without the necessity, or reasonable grounds upon which to conclude that such necessity exists, the power does not exist. As such, the board of health has no more power over the public schools than over private schools or other public assemblages, and its order applying to public schools only requiring vaccination as a prerequisite to the exercise of the right to attend a public school, could be justified only upon reasonable grounds appearing that the contagion of small-pox would more likely originate in or be

disseminated from the public schools than from other assemblages. Whether or not it might be invested with more power in this respect is a question not involved here and not necessary to consider.

While school directors and boards of education are invested with power to establish, provide for, govern and regulate public schools, they are in these respects nowise subject to the direction or control of the State Board of Health, and, as before pointed out, they have no authority to exclude children from the public schools on the ground that they refuse to be vaccinated,—unless, indeed, in cases of emergency, in the exercise of the police power, it is necessary, or reasonably appears to be necessary, to prevent the contagion of small-pox. Undoubtedly, also, children infected with or exposed to small-pox may be temporarily excluded or the school be temporarily suspended; but, like the exercise of similar power in other cases, such power is justified by the emergency, and, like the necessity which gives rise to it, ceases when the necessity ceases. No one would contend that a child could be permanently excluded from a public school because it had been exposed to small-pox, or that the school could be permanently closed because of the remote fear that the disease of small-pox might appear in the neighborhood, and that if the school should then be open and children in attendance upon it the public would be exposed to the contagion. And upon the same line of reasoning, without a law making vaccination compulsory, or prescribing it, upon grounds deemed sufficient by the legislature as necessary to the public health, as a condition of admission to or attendance upon the public schools, neither the State board nor any local board has any power to make or enforce a rule or order having the force of a general law in the respects mentioned.

We are not called upon to consider whether or not vaccination is a preventative, or the best known preventative, of small-pox. That it is so seems to be the con-

sensus of opinion of a learned and honorable profession, borne out by the history of its use for a century, and we can only so regard it; but when compulsorily applied, it must, like all other civil regulations, be applied in conformity to law. However fully satisfied, by learning and experience, a board might be that anti-toxine would prevent the spread of diphtheria, no one would contend that a rule enforcing its use as a condition precedent to the admission of a child to the public schools would, as the law now is, be valid. It is a matter of common knowledge that the number of those who seriously object to vaccination is by no means small, and they cannot, except when necessary for the public health and in conformity to law, be deprived of their right to protect ' themselves and those under their control from an invasion of their liberties by a practically compulsory inoculation of their bodies with a virus of any description, however meritorious it might be.

The same conclusion was reached by the Supreme Court of Wisconsin in *State ex rel.* v. *Burge,* 70 N. W. Rep. 347, in a case similar in all respects to this. In that case the court also, upon the question of the power of the legislature to delegate to such board the power to make a rule having the force of a general law, cited *Dowling* v. *Insurance Co.* 92 Wis. 63, which held that the legislature could not delegate to the insurance commissioner the power, essentially legislative, to prepare, approve and adopt a form of "a standard fire insurance policy" for use in that State, and which use was to be enforced by penal sanction of the act. See, also, on this subject, *O'Neil* v. *American Fire Ins. Co.* 166 Pa. St. 72, and *Anderson* v. *Manchester Fire Assurance Co.* 63 N. W. Rep. 241. See, also, *Tugman* v. *City of Chicago,* 78 Ill. 405.

As said in *State* v. *Young,* 29 Minn. 551: "It is a principle not questioned, that, except where authorized by the constitution, as in respect to municipalities, the legislature cannot delegate legislative power—cannot confer

on any body or person the power to determine what shall be law. The legislature only must determine this."

*Hurst* v. *Warner,* 60 N. W. Rep. 440, (Mich.) construed an act of the Michigan legislature which provided that, in certain contingencies specified in the act, the State Board of Health should be authorized to establish a quarantine, and to make rules for the disinfection of baggage belonging to persons coming from a country where contagious disease exists, and, through an inspector acting thereunder, to detain for disinfection baggage of passengers passing through the State and coming from localities where a dangerous, communicable disease exists. It was held by the court that the act did not authorize a rule subjecting the baggage of *all* immigrants to disinfection, whether such immigrant came from a part or locality where dangerous, communicable disease existed or not.

The case of *Abeel* v. *Clark,* 84 Cal. 226, was a *mandamus* proceeding to compel the principal of a public school to admit Abeel as a scholar, who had been refused admission because he had not complied with the Vaccination act. This act provided that the school trustees and board shall "exclude from the benefits of the common schools any child or any person who has not been vaccinated." The act was held constitutional. The court say: "Vaccination, then, being the most effective method known of preventing the spread of the disease referred to, (small-pox,) it was for the *legislature to determine* whether the scholars of the public schools be subjected to it."

The case of *Duffield* v. *School District,* 162 Pa. St. 476, was a *mandamus* proceeding to compel the admission of plaintiff's minor child into the common schools of Williamsport. The facts in this case were, that there was an ordinance of the city of Williamsport in force providing that no pupil "shall be permitted to attend any public or private school in said city without a certificate of a practicing physician that such pupil has been subjected to the process of vaccination;" that small-pox was then

exisiting in Williamsport and had been epidemic in many near-by cities and towns; that the board of health and the school board, in view of the general alarm prevailing in the city over the report that a case of small-pox was in the city, had adopted a resolution in conformity with said city ordinance. The questions raised related to the power of the school board to adopt reasonable health regulations and to the reasonableness of the particular regulation complained of, and the action of the board was sustained. But the case was unlike the one at bar in the fact that small-pox was then in the city and was prevalent in adjoining communities. A similar conclusion was reached in *Bissell* v. *Davidson*, 65 Conn. 183, but the general statutes of Connecticut expressly conferred upon the school committee the power exercised by it.

The cases *In re Walters*, 33 N. Y. Sup. 322, and *Abeel* v. *Clark, supra,* involved the constitutionality of statutes requiring all children to be vaccinated before being admitted to the public schools, and such statutes were held to be constitutional. That question is not involved here, and the reasoning employed in those cases does not apply where this legislative power is exercised by an administrative board, and not by the legislature itself. Nor can the rule in question be regarded as a reasonable one, where, as in this case, small-pox did not exist in the community, and where there was no cause to apprehend that it was approaching the vicinity of the school or likely to become prevalent there. The record wholly fails to show that there were any grounds upon which the board could have any reasonable belief that the public health was in any danger whatever.

Neither the board of health nor the board of directors having any power to make and enforce the order in question under the facts of this case, it follows that appellees were unlawfully excluded from the school.

The powers of school officers under the statute have been considered by this court in numerous cases. (*Ruli-*

*son* v. *Post,* 79 Ill. 567; *Trustees of Schools* v. *People,* 87 id. 303; *McCormick* v. *Burt,* 95 id. 263; *Chase* v. *Stephenson,* 71 id. 383; *People* v. *Board of Education,* 101 id. 308, and other cases.) But nothing said in any of those cases sustains the contention of appellants.

The judgment of the Appellate Court affirming the judgment of the circuit court is affirmed.

*Judgment affirmed.*