## VACCINATION IN THE PUBLIC SCHOOLS.

[Common Pleas Court of Franklin County.]

### DR. C. S. CARR v. BOARD OF EDUCATION OF COLUMBUS.

Decided, February 5, 1903.

*Vaccination—Powers of the Legislature, Boards of Health and Boards of Education with Reference Thereto—Requirement of as a Condition of Admission to the Public Schools—Conditions Justifying Such a Requirement—Limitations as to Time of Exclusion.*

1. In view of the fact that boards of education have been given by general law supervision over the subject of the vaccination of pupils attending the public schools, it is questionable whether the Legislature intended to confer the same discretionary powers upon boards of health.
2. But where an order by the health department, directed to the superintendent of the public schools, requiring that all pupils in the public schools who have not been successfully vaccinated within five years last past shall be excluded therefrom, is adopted by the board of education, and the direction given by that board that it be strictly complied with, such order becomes the order of the board of education, and if justified by public necessity and the prevalence of small-pox in the community it is a valid order.
3. Such an order is not to be regarded as of a permanent nature because its operation is not limited in terms to a particular period, but has force and effect only so long as danger exists of an epidemic of small-pox.

BIGGER, J.

The plaintiff in this case seeks by a writ of mandamus to require the board of education of the city of Columbus to admit his daughter, Helen Carr, a minor, to the high school as a pupil. In substance the plaintiff avers that he is a citizen-tax-payer and resident of the city of Columbus, residing in the district of the East High School; that his daughter, who is under his care and custody and entitled to attend said East High School, was, on January 19, 1903, denied admission to the school upon the ground that she had not been thoroughly vaccinated; that the board of education has established a rule which requires that no pupil shall attend any public school in the city of Columbus unless such pupil has been

thoroughly vaccinated within five years, but that a certificate from any reputable physician that such vaccination is unnecessary shall be accepted. The plaintiff says that his daughter had not been vaccinated, that she is in perfect health, and has not been exposed to small-pox, and that it does not exist among the pupils, teachers and employes of said East High School, and that the plaintiff does not believe that vaccination will prevent small-pox, but believes it to be dangerous to the health of his daughter, and, therefore, has declined to have her vaccinated, and that for this cause alone she is excluded from the privileges of the school.

It is further averred that no class of persons in said city, although as susceptible to small-pox as the pupils in the schools, are required by law or ordinance of the city to be vaccinated.

It is further averred that those vaccinated are not immune from small-pox, but that many hundreds, if not thousands, of those vaccinated have suffered lingering and permanent diseases resulting therefrom. There are other averments in the petition as to the existence of statutes and with reference to rights alleged to exist thereunder, but the above are the issuable facts stated in the petition.

To this petition the defendant has filed an answer, in which all the above issuable facts are admitted, except that with reference to the ill effects resulting from vaccination, and by way of new matter in defense the board says that on or about January 13, 1903, the department of health of the city of Columbus, through its duly appointed and constituted superintendent, issued and served upon the defendant and J. A. Shawan, superintendent of public schools of the city of Columbus, an order of which the following is a copy:

"COLUMBUS, OHIO, January 13, 1903.

"*Mr. J. A. Shawan, Superintendent, Public Schools, Columbus, Ohio:*

"MY DEAR SIR: On account of the prevalence of small-pox in our city, I am forced to issue an order directing you to exclude from the schools of Columbus, Ohio, all children who have not been successfully vaccinated within the last five years. There are children in school who have certificates which state that they have been vaccinated, but do not state whether or not those vaccinations were successful. Insist that certificates state that the vaccinations were successful. Reject the certificates which do not so state. Children

who never have been vaccinated may be permitted to attend school upon a statement from their physician that they, the children, have submitted themselves to vaccination, but these children later on (ten days) must present certificates, stating that their vaccinations were successful. If not successful to submit to a revaccination.

"Very respectfully,

"DR. McKENDREE SMITH,

"*Superintendent, Department of Health.*"

That thereupon, on January 15, 1903, the defendant, through its duly constituted committee on hygiene, passed and adopted according to law and placed upon its records the following resolution:

"*Resolved,* That it is the sense of this committee that the order of the superintendent of health requiring vaccination should be strictly complied with.

"(Signed)    P. D. SHRINER,

"C. S. MEANS,

"J. A. STOUT."

That on or about April 1, 1902, the defendant, the board of education of the city of Columbus, Ohio, adopted a manual of rules and regulations for its own government in the control, conduct and management of the public schools of said city, which manual has ever since the said date last named and now is in full force and effect, to-wit:

"VACCINATION.

"Section 12*a*. No pupil shall attend any public school nor shall any teacher be employed in any public school unless such pupil or teacher has first been thoroughly vaccinated, and that they shall be revaccinated within five years of each original vaccination. These provisions shall apply to all employes of the board of education.

"*b*. At the commencement of each term the principal shall require all pupils to produce certificates of vaccination, but they shall be given sufficient time for the vaccination to prove successful before being excluded from school.

"*c*. A certificate from any reputable physician stating that such revaccination is unnecessary shall be accepted.

"*d*. All principals of schools shall heartily co-operate with any officer of the board of health sent to the building under direction of the board on official business, and, should the schools be ordered closed, the same shall be immediately reported to the superintendent or officers of the board."

That by virtue of the facts aforesaid, on or about January 16, 1903, J. A. Shawan, superintendent of public schools of the city of Columbus, under the order and direction of the board of education of the city of Columbus, Ohio, defendant, issued to the principals of the several schools and school buildings of the city, including Frank Pearson, principal of what is known as the East High School, the following order:

"To the principals of the Columbus schools: The following order from the superintendent of health for the city of Columbus explains itself. Under Article VIII, Section 12, Clause D of the manual of the board of education, you are expected to see that this order is enforced until otherwise notified."

That the order referred to in said order of said J. A. Shawan is the said order of the health department of date January 13, 1903; that the Helen Carr named in the petition not having been vaccinated, as required by law, and refusing to comply with the order, was, for that reason, excluded from attendance at said East High School.

The board further avers that at the date of said exclusion of said Helen Carr, as aforesaid, a contagious disease, known as small-pox, in the most virulent form, was, and is very prevalent in the city of Columbus and was in some of the schools thereof, and had created great alarm and disorganization therein, and that there was imminent danger of said disease being, by contagion, further spread and disseminated through the schools and through the community; that vaccination of the children in the public schools at this time, as that term is used and understood in medical science, and in the law of Ohio and in the rules and orders aforesaid, is a safe, healthy and efficient agency and means for the prevention of the spread and dissemination of the disease of small-pox by contagion, and the spread of said disease by contagion would necessarily be very much controlled and limited thereby; that vaccination is the best method known to medical science to prevent the spread of small-pox by contagion. This is followed by some averments which are in the nature of conclusions of the pleader and not issuable facts.

To this answer the plaintiff has interposed a general demurrer. This challenges the sufficiency of the facts stated in the answer,

admitting them all to be true, as a defense to the averments contained in the petition. The questions presented for decision upon this demurrer have not been decided by the courts of this state in any reported case. The question as to whether or not vaccination is effective to prevent the dissemination of the disease of small-pox is not before the court for decision, but is entirely eliminated from consideration upon this hearing. The answer avers that it is the best known method for the prevention of the dissemination of the disease and the demurrer admits that to be true. Indeed it is doubtful, under the authorities, whether or not a court, even upon a hearing of the case upon its merits, will undertake to determine that question. Upon that subject the Supreme Court of Indiana says, in the case of *Blue* v. *Beach,* 56 N. E. Rep., 89, 91 (155 Ind., 121):

"The question is one which the Legislature or boards of health, in the exercise of the powers conferred upon them, must, in the first instance, determine, as the law affords no means for the question to be subjected to a judicial inquiry or determination."

But however that may be, upon this submission of the case, the court must assume what is admitted by the demurrer that it is a safe, healthy and efficient agency or means for the prevention of the spread and dissemination of small-pox. It is also admitted upon this hearing that the disease of small-pox, in the most virulent form, is very prevalent in the city, and exists in some of the schools thereof, and that there is imminent danger of its being spread and disseminated through the schools and through the community.

The contention of counsel for the relator is that under the law in this state, the health authorities of the city of Columbus are without authority of law to make and enforce such a rule. The question as to whether or not the legislative branch of the government may, in the exercise of the police power inherent therein, enact a law which will make vaccination a condition of admission to the schools is not disputed. That it has such power has been frequently decided and has never been denied by a decision of any court so far as I know. It was so held in the following cases: *Morris* v. *Columbus,* 30 S. E. Rep., 850 (102 Ga., 792, 796; 42 L. R. A., 175); *Abeel* v. *Clark,* 24 Pac. Rep., 383 (84 Cal., 226, 230);

*Bissell* v. *Davidson*, 32 Atl. Rep., 348 (65 Conn., 183; 29 L. R. A., 251).

Parker & Worthington, on Public Health, say, at Section 123:

"It is sometimes provided by law that persons who may have been exposed to contagion who come from places believed to be infected, and particularly children attending the public schools, shall submit to vaccination under the direction of the health authorities. This requirement is a constitutional exercise of the police power of the state which can be sustained as a precautionary measure in the interests of the public health."

It seems to be the settled law, and I have found no authority to the contrary, that it is within the province and power of the legislative branch of the government to require vaccination as a condition of admission to the schools. While it may be, therefore, considered as settled that the power exists, the question presented in this case is, has the power to make such an order as is sought to be enforced by the board of education of this city been conferred by law? At the last regular session of the Legislature of this state, the health laws of the state were codified by an act passed May 7, 1902. Section 2118, Revised Statutes, 95 O. L., 424, is as follows:

"Section 2118. The board of health of any city, village, hamlet or township may make such orders and regulations as it may deem necessary for its own government, for the public health, the prevention or restriction of disease, and the prevention, abatement or suppression of nuisances."

Then follows a provision for adoption and publication of orders intended for the general public.

Section 2137, Revised Statutes, 95 O. L., 433, provides as follows:

"Section 2137. The board of health is hereby required to inspect semi-annually, and oftener if in the judgment of the board it shall be deemed necessary, the sanitary condition of all schools and school buildings within its jurisdiction, and may, during an epidemic, or threatened epidemic, or when any dangerous, communicable disease is unusually prevalent, close any school and prohibit public gatherings, for such time as it may deem necessary, and may disinfect any school building. The board shall abate all nuisances and may remove or correct all conditions detrimental

to health or well-being found upon school property by serving an order upon the board of education, school board, or other person, or persons responsible for such property, for the abatement of such nuisance or condition within a reasonable but fixed time, and any person failing to comply with such order, unless it is shown that there was good and sufficient reason therefor, shall be fined in any sum not exceeding one hundred dollars. The board may appoint such number of inspectors of schools and school buildings as it may deem necessary to properly carry out the provisions of this section. The board of health may take measures and supply agents and afford inducements and facilities for gratuitous vaccination."

Section 2148, Revised Statutes, 95 O. L., 437, provides:

"Section 2148. It shall be the duty of the board of health, or health department, on or before the fifteenth day of January of each year, to make a report, in writing, to the counsel of the corporation, and to the state board of health, which shall be for the preceding calendar year, upon the sanitary condition and prospects of such city or village, which report shall contain the statistics of deaths, the action of the board and its officers and agents, and the names thereof for the past year; and it may contain other useful information, and the board shall suggest therein any further legislative action deemed proper for the better protection of life and health."

My attention is also called to Section 2133, Revised Statutes, of the act, which contains the language that the board "may make and enforce such rules and regulations as such board may deem wise and necessary for the protection of the health of the people of the community or state." This language, however, I think clearly refers only to rules and regulations concerning quarantine of vessels, railroads, stages and other public or private vehicles, conveying persons, baggage or freight, as that is the subject of Sections 2133 and 2134, Revised Statutes. In my opinion the language is limited to that.

The only provisions of the act which seem to be pertinent as conferring power upon health boards, to make rules and regulations concerning the prevention of the dissemination of contagious diseases are those just cited. The act provides in detail, in other sections, as to certain specific powers to be exercised and duties to be performed by a board of health. The act contains thirty-nine sections, not including the repealing section, and contains many pro-

visions relating to sanitation and the preservation of the health of the public. If the decision of the question of the power of a board of education to make and enforce such a rule must depend entirely upon the grant of power contained in this act to boards of health, it presents a question of much difficulty. The several sections of this act being upon the same general subject, to-wit, preservation of health and the lives of the people of the community, they must be construed together. It is true that the language of Section 2118, Revised Statutes, is broad enough, considered alone, to confer power upon the board of health to make rules and regulations *ad libitum*, for the protection of the public health and the prevention and restriction of disease. It is doubtless true that a grant of power which, in one section of the act is general, may be limited by restrictions contained in other sections of the same act, and that a survey of the whole act may reveal that it was the legislative intention to confine the power within particular limitations imposed by other grants contained in other sections of the act. The effect of particular provisions respecting the exercise of powers by a board on a general provision as to power overlapping them, is a question of legislative intention. We have in this act a general grant of power. Then, by a subsequent section the Legislature has provided certain duties of the boards of health with reference to schools, school buildings and property. Did the Legislature thereby intend to limit the power of health boards to the particular duties therein provided in so far as their power over pupils in the public schools is concerned?

Section 2137, Revised Statutes, confers power upon the board to close the public schools in the face of an epidemic or threatened epidemic. May the health board also under the general grant of power contained in Section 2118, Revised Statutes, require vaccination as a condition precedent to the right of pupils to attend public schools? There is another and important consideration, in my judgment, to be taken into account in this connection, and that is this: The Legislature had long prior to the passage of the act of May 7, 1902, provided by a general law that every board of education in the state of Ohio might make rules and regulations concerning vaccination of pupils. This provision is found in Section 3986, Revised Statutes, and is as follows:

"Section 3986. The board of each district may make and enforce such rules and regulations to secure the vaccination of, and to prevent the spread of small-pox among the pupils attending or eligible to attend the schools of the district, as in its opinion the safety and interests of the public require."

In view of the fact that the board of education was thus given, by general law, supervision over the subject of vaccination of the pupils attending the public schools, it is, to say the least, very questionable whether it was the legislative intent to also confer the same discretionary power upon the board of health. The law upon the subject of health boards and their duties and powers nowhere makes any specific provision for the enforcement of vaccination among children attending schools. The law does enumerate the duties of the health board with respect to schools, and empowers health boards to order schools closed and to take measures and supply agents and afford inducements and facilities for gratuitous vaccination. It is a grave question, therefore, whether, in view of these facts, the powers of the board of health extend beyond that of ordering the public schools to be closed in case of an epidemic or threatened epidemic of small-pox, and to afford facilities for gratuitous vaccination. The conclusion seems to be reasonable that the Legislature may have reasoned that in view of the fact that boards of education had been clothed with power over the subject of vaccination of pupils in the schools, that to grant the same discretionary power to boards of health might lead to a conflict, and that the omission of this power over the subject of vaccination from the provisions of the act governing health boards, was an intentional omission and intended to prevent a clash of authority between two boards each clothed with the same discretionary power.

The health laws do not specifically confer any power upon boards of health over boards of education except those contained in Section 2137, Revised Statutes, and the power to require vaccination of the pupils is not one of them. In view of those considerations I have reached the conclusion that the question as to the right of a board of health under the law as it now exists in this state, to order a board of education to exclude from school all children who have not been successfully vaccinated, is one of much doubt. The question as to the power of the local health boards to require vaccination

as a condition of admission to the public schools, is one upon which
the decisions of the courts are not in harmony. As I have before
stated, where the Legislature has expressly conferred the power,
by law, upon such boards, the right to enforce it seems to have been
universally sustained by the courts. At least, I have found no ad-
verse decision. Where the exercise of such power has been at-
tempted by health boards under what was claimed to be a gen-
eral grant of power sufficiently general and broad to cover and
include this power, the decisions are not in harmony.

In the case of *State* v. *Burdge*, 95 Wis., 390 (70 N. W. Rep.,
347), the Supreme Court of that state held that in the absence
of a statute authorizing compulsory vaccination as one of the con-
ditions of the right or privilege of attending the public schools,
that a rule of a health board excluding unvaccinated children from
the schools could not be sustained as a valid exercise of the police
power. It was decided that "the state board of health is a purely
administrative body, and has no legislative power, and none can be
constitutionally delegated to it. The provisions of Sections 1409*b*,
1409*d*, S. & B. Ann. Stat., authorizing that board to make such
regulation as may, in its judgment, be necessary for the protection
of the people from contagious diseases, and giving them the power
to designate what diseases are contagious or dangerous to the public
health, are an unwarranted delegation of legislative power." It
was further held that in that case that even if the power had been
delegated, it would be an unreasonable exercise of the power, if at
the time of its adoption there was no epidemic of small-pox in the
state, and but few cases scattered throughout the state, and only
one case in the city where it was attempted to be enforced, and
that had been properly quarantined. This is the strongest case re-
ported in favor of the contention of the relator.

In the case of *Potts* v. *Breen et al*, 167 Ill., 67 (47 N. E. Rep.,
81), the Supreme Court of that state decided that the health law
of that state which provides that the board of health shall have su-
pervisory power over the "interests of the health and lives" of citi-
zens, is to be construed in relation to the specific grants of power
contained in the act as a whole and limited by those specific pro-
visions. That there was no law of the state which required vaccina-
tion as a condition to attendance in the schools, and that such a

general grant of power to health boards did not warrant the enforcement of such a rule. But in that case the court further held in the fifth paragraph of the syllabus:

"The power to compel the vaccination of children as a prerequisite to their attending public schools, can be derived only from the general police power of the state and can be justified only as a necessary means for preserving health.

"6. A rule adopted by the state board of health compelling the vaccination of children as a prerequisite to their attending the public schools is unreasonable where small-pox does not exist in the community and there is no reasonable cause to apprehend its appearance.

"7. School directors have no right, either under their own rules or by order of the state board of health, to exclude from public schools children refusing to be vaccinated unless such course is necessary or reasonably appears to be necessary to prevent the appearance or spread of small-pox."

In this case again, as well as in *State* v. *Burdge, supra,* it appears that small-pox did not exist in the community at the time of the order, and the Supreme Court of Illinois clearly indicate that under a state of facts such as is disclosed by the answer in this case, and which, upon this submission, is admitted to be true, such an exercise of power would, in all probability, have been upheld. In a case recently decided by the Supreme Court of Michigan, *Matthews* v. *School District No. 1,* 86 N. W. Rep., 1036, 1038, 1039, the Supreme Court of that state held that under a general law which provides that school boards shall make suitable rules for the government of the schools, this did not authorize the school board to make vaccination a condition of admission to the schools. In that case it appeared that relator's children were excluded from school while small-pox existed in the state, but not in the district, and while there was no imminent danger of its existence. The decision was by a divided court—three to two. In the majority opinion by Justice Moore, it is said:

"If the rule was that during the prevalence of small-pox in Kalamazoo, the child could not attend school unless vaccinated, a very different result would be reached. These epidemics never last very long and the parent and child might very well say, if they desired, that they would absent themselves from school during the epidemic, and this could be done without their being lawbreakers."

They have a compulsory education law in Michigan as in Ohio. Continuing, the judge says:

"In the case cited by Justice Long, *Duffield* v. *School District*, 162 Pa. St., 476, the record shows that small-pox then existed in the school district. The school board had, because of this fact, and at the request of the board of health, adopted the rule requiring vaccination—a very different case than the case at bar."

The judge then cites the case of *Potts* v. *Breen*, 47 N. E. Rep., 81 (167 Ill., 67), and the reservation which that court make in its decision with reference to an "emergency, in the exercise of police power, when it is necessary, or reasonably appears to be necessary, to prevent the contagion of small-pox. * * * But, like the exercise of similar power in other cases, such power is justified by the emergency, and, like the necessity which gave rise to it, ceases when the necessity ceases."

In concluding the opinion Judge Moore says, page 1040:

"In what I have said I do not mean to intimate that during the prevalence of diphtheria or small-pox or any other epidemic or contagious disease in a school district, the board may not, under its general powers, temporarily close the schools, or temporarily say who shall be excluded from the schools until the epidemic has passed; but what I do say is that the Legislature has not undertaken to give them the power when no epidemic of contagious disease exists or is imminent in the district, to pass a general, continuing rule which would have the effect of a general law excluding all pupils who will not submit to vaccination."

In *Matthews* v. *School District No. 1, supra,* it was admitted that there had been no small-pox in the city of Kalamazoo or in such school district, but that the disease was prevalent in some parts of the United States and Michigan.

This decision, therefore, only decides that under the facts of that case, there being no prevalence of the disease in that city and no case of it in the city, that the board could not make and enforce a permanent rule of exclusion on the ground of non-vaccination.

From the opinion of the majority of the court it clearly appears as in *Potts* v. *Breen, supra,* that under the state of facts disclosed here, the decision would have been the other way, and Justice Moore clearly says so.

In the case of *Blue* v. *Beach,* 155 Ind., 121, the Supreme Court of that state decided that:

"Section 6711, *et seq.,* Burns, 1894, authorizing and empowering the state board of health to adopt rules and by-laws to prevent the spread of contagious and infectious diseases, is not a delegation of legislative authority in violation of Article IV, Section 1 of the Constitution, vesting the legislative authority of the state in the General Assembly.

"Under the provisions of Section 6718, Burns, 1894, making it the duty of the local boards of health to protect the public health and arrest the spread of contagious diseases, a local board of health may require that school children be vaccinated as a sanitary condition imposed upon their privilege of attending school during a period of threatened epidemic of small-pox."

In that case the local board found and declared that there had been and was at the time of the order an exposure to and danger of an epidemic within the city of Terre Haute. The court, in the opinion, reviews all the cases upon the subject decided prior to that date, including the cases of *State* v. *Burdge* and *Potts* v. *Breen.*

In *Rebenack, In re,* 62 Mo. App., 8, the St. Louis board of education ordered that unvaccinated children should be excluded from the public schools. In that case the charter law of St. Louis provided that the president and directors of the school board should have power to make all rules, ordinances and statutes proper for the government and management of such schools, etc., so that the same shall not be inconsistent with the law of the land. The court decided that the board had the right to require vaccination of school children and to exclude the unvaccinated. In *Duffield* v. *School District,* 29 Atl. Rep., 742 (162 Pa. St., 476), it appeared that the child had been excluded under an order requiring vaccination, and that the only authority for it was an ordinance of the city council, which provided that no pupils shall attend the schools of the city except they be vaccinated or furnish a certificate from a physician that such vaccination had been performed. The school board, upon being notified by the board of health of an epidemic of small-pox in other cities and towns in that part of the state, issued an order requiring vaccination as a condition of attendance in the public schools, and this was upheld by the Supreme Court of that state

as a valid exercise of the power conferred upon the board. In that case the Legislature had nowhere given to school boards, in express terms, the power to require vaccination as a condition of admission, or to suspend or expel pupils for failure to comply with that order.

In *State* v. *Board of Ed.,* 60 Pac. Rep., 1013 (21 Utah, 401), the answer to a writ of mandate, among other things, alleged that small-pox was an infectious contagion and epidemic in the community, and included types of the most malignant and deadly character, and that the only known preventive therefor, recognized and approved by medical science throughout the civilized world, was vaccination with animal lymph or vaccine matter; that such vaccination was a condition allowing pupils to enter public schools in order to prevent the spread of such disease therein; that the petitioner, by means of the premises, not having been vaccinated as a condition of entering therein, was liable to carry the disease into the public schools; that an emergency existed for calling into existence such powers as the board of health possessed in order to prevent the threatened spread of small-pox. A demurrer was interposed to the answer in this case—*Held:* That for the purpose of the hearing, such demurrer admitted as true the material allegations of fact contained in the answer, upon which admitted facts the court must apply the law.

"Where it is admitted that an emergency existed, and that the contagious and infectious disease of small-pox was prevalent, and vaccination is admitted by the pleadings to be the only safe preventive recognized and approved by medical science throughout the civilized world, a rule of the board of health and the board of education, excluding all unvaccinated pupils who are liable to carry small-pox into the schools, from attending the public schools during the prevalence of the disease, is not only a reasonable regulation in aid of the public health, and justified by a reasonable construction of Sections 9 and 24, Chapter 45, Sess. Laws 1899, but it also finds ample support in the police power inherent in the state."

In that case the court says, p. 1015, in the opinion, that:

"Until it (the disease), is developed, there are no means by which its presence can be detected. * * * Exposure to the disease may come to the child without her knowledge and when least

expected.    When infected the child may communicate the disease to hundreds of children before the patient is aware she is infected with it."

There is a statute in Utah which empowers the board to exclude those from the schools who are liable to convey such infectious diseases as small-pox to those in attendance, but there does not appear to be any statute requiring vaccination as a condition of attendance.    In the case of *State* v. *Zimmerman,* 90 N. W. Rep., 783 (Minn.), decided by the Supreme Court of Minnesota on June 6, 1902, it was held that:

"Legislative grants of power to municipalities, intended to secure the preservation of the public health, and to provide for the enforcement of proper and necessary sanitary regulations to prevent the spread of contagious diseases, are, notwithstanding the individual liberty of the citizen, is, in a measure, involved, entitled to a broad and liberal construction by the courts, in aid of the beneficial purposes of their enactment.

"2.    The various provisions of a municipal charter adopted under a constitution authorizing cities to frame their own charters as to subjects properly belonging to the government of municipalities, have all the force and effect of legislative enactments.

"3.    The provisions of the charter of the city of St. Paul, adopted under and pursuant to constitutional authority, providing for a commissioner of health, and defining his duties, *held* valid, and, as respects the duties there imposed on such commissioner, self-executing, requiring no action on the part of the board of health or the city council to authorize the performance of the same.

"4.    A general grant of power in broad and comprehensive terms, to do all acts and make all rules and regulations deemed necessary and expedient for the preservation of the public health, vests in the authorities to whom granted power to enforce in cases of emergency, rendering it reasonably necessary in the interests of the public health and for the prevention of the spread of small pox, a regulation requiring children to be vaccinated as a condition to their admission to the public schools.

"5.    Such a regulation made by the commissioner of health of the city of St. Paul, *held* valid and enforcible."

In the opinion the court said:

"The question whether the public authorities may require the vaccination of children as a condition precedent to their right to attend public schools, has been much discussed by the courts.    The

authorities are not uniform on the subject. By some courts it is held that the power exists and may be exercised without regard to the existence of an emergency occasioned by an epidemic of small-pox; other authorities limit the right to exercise the power, whether expressly conferred by legislative enactment or not, to the presence of an epidemic and when there is imminent danger of the disease spreading among the people of the community; and by still other courts that, even without legislative authority, health officers possess the power to impose such conditions and may enforce them in cases of emergency amounting to 'an overruling necessity.' * * * But whatever may be the correct rule to apply to controversies of this kind, if the power may be exercised under any circumstances where legislative authority has been granted, it should be where, as in the case at bar, there is an epidemic of small-pox and imminent danger of its spreading. The courts are not concerned with the question of the efficacy of this treatment, nor with the considerations relative to its necessity and propriety as a police regulation, except, perhaps, in those cases where the abuse of power is pleaded and shown. The treatment may be, as claimed by some, a gross interference with individual liberty, or as claimed by others, a certain preventive of a much dreaded disease, and the spread of the same, and therefore a great public benefactor. We are not to be understood as expressing an opinion upon the merits of the treatment."

The court then quotes the decision of the Indiana Supreme Court in *Blue* v. *Beach, supra,* that the question is one for the Legislature and boards of health, and not for the courts.

The state of Minnesota has a compulsory education law like Ohio, and the court says with reference to that, page 786:

"It is very true that the statutes of our state provide that admission to the public schools shall be free to all persons of a defined age and residence, and that every parent having control of any child of school age is expressly required to send such child to school. * * * But all these statutory provisions must be construed in connection with and subordinate to the statutes on the subject of the preservation of the public health and the prevention of the spread of contagious diseases."

Pennsylvania has a compulsory education law. In *Commonwealth* v. *Smith,* 9 Pa. Dist. Rep., 625, it was held that where a child was excluded from school for failure to comply with an order for vaccination, and the parent was prosecuted, that it was a complete defense and that the parent complies with the requirement when he has sent his child to school from which he is excluded.

The Supreme Court of Indiana reaffirms its decision in *State* v. *Beil,* 60 N. E. Rep., 672 (157 Ind., 25).

As a result of my investigation of this subject, I found no case in which a court denied the power of a board of health or board of education, in the presence of an epidemic of small-pox, or when such an epidemic was imminent, to require vaccination as a condition of admission to the schools. While *State* v. *Burdge, supra,* does not make any reservation in its decision, yet the facts show that small-pox was not prevalent, and that only one case existed in the city, and that was quarantined.

The Illinois court expressly recognizes that such a power might be exercised if the facts of the case had been sufficient to warrant it, and in the Michigan case the court expressly says that under such a condition as is disclosed by the answer in the case at bar the decision would have been the other way.

I have also reached the conclusion, as stated, that it is very doubtful whether the Legislature has conferred upon health boards the power to issue such an order as the board of health of this city issued to the board of education.

I do not find it necessary, however, to decide that question, as, in my opinion, the board of education have authority under the general law to which I have referred, Section 3986, Revised Statutes, to issue and enforce the order in question in this case. It might be suggested that the order is not the order of the board of education, but only the order of the board of health, but the statute does not apparently empower boards of health to issue such orders to boards of education, but reposes this power as to vaccination in the board of education, and upon the averments of the answer it appears that the board of education did not simply, without consideration and recognizing the authority of the board of health, proceed to carry out the order, but that it considered the matter and made the order its own. The answer states that the committee on hygiene of the board of education passed and adopted, according to law, and placed upon its records, a resolution that it was the sense of that committee that the order of the superintendent of health should be strictly complied with. It is further averred that thereafter the superintendent of public schools, under the order

and direction of the board of education, issued this order to the principals of the schools. This, it seems to me, shows that the board considered the advisability of enforcing this order, and that it is, in effect, the order of the board of education..

Now, Section 3986, Revised Statutes, expressly confers upon boards of education the power to make and enforce rules and regulations to secure vaccination and to prevent the spread of small-pox among the pupils attending or eligible to attend the public schools, as, in its opinion, the safety of the public may require. Here is an express grant of power over the subject of vaccination, and they are to make and enforce rules to secure vaccination. What more reasonable rule could they make and enforce to secure vaccination than that they have made? It would hardly be claimed that they could resort to physical force to compel pupils to submit to vaccination, nor would it be reasonable to apply any sort of corporal punishment to secure that end.

That the Legislature did not mean to clothe boards of education with power to merely furnish means to secure vaccination is clear from the last clause of Section 3986, Revised Statutes, which is:

"And the boards of health and councils of municipal corporations and the trustees of townships, shall, on application of the board of education of the district, provide at the public expense, without delay, the means of vaccination to such pupils as are not provided therewith by their parents or guardians."

Clearly, therefore, a board of education is clothed with power beyond that of merely furnishing means of vaccination, for the section provides that that shall be furnished by the board of health and councils on the application of the board of education.

The Legislature has, by the passage of this act, recognized the efficacy of vaccination as a preventive of the spread of small-pox, and the only question which is left for the courts is as to the reasonableness of the regulation of the boards to secure the vaccination of pupils attending the public schools. If the rule or regulation is to be something other than merely furnishing the means of vaccination which is to be furnished by others, then I do not see any escape from the conclusion that about the only rule within reason which the board could make and enforce to secure vaccination, is the one they have made.

Now, it does not follow by any means that the board of education, except when small-pox is prevalent and in case of an emergency, may require vaccination as a condition of admission to the public schools.  The board is only clothed with power to make rules to prevent the spread of small-pox.  A reasonable construction of the law would seem to be that if there is no small-pox existing in the community, there would be no reason to take steps to prevent its spread.  The courts do not recognize the right of such boards to make this requirement except when the public necessity demands it, during the prevalence of the disease of small-pox.

The answer states a general rule or regulation of the board of education upon the subject of vaccination.  Whether that rule was made during the prevalence of small-pox is not alleged.  The order in this case does not, it is true, limit its operation within any particular period of time.  It can not be reasonably construed, however, as an order which is to exclude the daughter of the relator permanently from the schools.  Such an order would be doubtless held to be unreasonable and beyond the power of the board.

In the case of *Blue* v. *Beach,* 56 N. E. Rep., 89, 96 (one of the strongest cases to support the contention of the board, the Indiana case), the order was without any limitations as to time, as in this case, but the Supreme Court of Indiana said:

"Appellant contends that under the order of the local board his son was to be permanently expelled from the public schools of the city of Terre Haute unless he submitted to vaccination.  No such unreasonable interpretation can be placed upon the rule or order in question.  The order was the offspring, as we have seen, of an emergency arising from a reasonable apprehension upon the board's part that small-pox would become epidemic or prevalent in the city of Terre Haute.  The rule or order could not be construed as having any force or effect beyond the existence of that emergency; and Kleo Blue, by virtue of its operation, could only be excluded from school upon his refusal to be vaccinated until after the danger of the epidemic of small-pox had disappeared."

A very full discussion of this whole subject of compulsory vaccination will be found in Law Notes of March, 1901, at page 224, in which the author reviews all of the decisions prior to that date, and deduces the conclusion that:

"It is now settled almost unanimously that in the exercise of police power inherent in the state, the Legislature may confer authority upon administrative boards of the nature of boards of health, etc., to adopt rules, by-laws and regulations reasonably adapted to carry out the purpose and object for which they are created, and that such boards may make reasonable requirements respecting vaccination."

For the reasons stated, I am of opinion that the answer of the defendant contains averments which are sufficient answer to the petition, and the demurrer is overruled.

*M. B. Earnhart,* for plaintiff.

*G. D. Jones,* for defendant.