THE STATE EX REL. ADAMS, Respondent, vs. BURDGE and others, Appellants.

*February 8 — February 23, 1897.*

*Delegation of legislative power: State board of health: School children, compulsory vaccination of.*

1. There is no statute in this state authorizing compulsory vaccination, nor any statute which requires vaccination as one of the conditions of the right or privilege of attending the public schools; and,

in the absence of any such statute, a rule adopted by the state board of health January 26, 1894, and modified in June, 1894, excluding from public and other schools all school children who do not present certificates of vaccination, cannot be sustained as a valid exercise of the police powers of that board.

2. The state board of health is a purely administrative body, and has no legislative power, and none can constitutionally be delegated to it. The provisions of secs. 1409b, 1409d, S. & B. Ann. Stats., authorizing that board to make such regulations "as may in its judgment be necessary for the protection of the people" from contagious diseases, and giving them the power to designate what diseases are "contagious or dangerous to the public health," are an unwarranted delegation of legislative power.

3. Even if the state board of health possessed power to make such a rule excluding children from schools who do not present certificates of vaccination, it would be held to be void, because unreasonable, if at the time of its adoption there was no epidemic of smallpox existing in the state and but few cases scattered through the whole state, and if in the city where it was sought to be enforced there had been but one case and that had been properly quarantined, and the board of education had no belief or apprehension that it either is prevalent there or approaching the place.

APPEAL from a judgment of the circuit court for Rock county: John R. Bennett, Circuit Judge. *Affirmed.*

This was a proceeding against the school board of the city of Beloit to obtain a peremptory *mandamus* commanding the defendants, as such board, to permit the relator's three children to attend the public schools in said city, from which it was alleged they had been wrongfully and unlawfully expelled March 13, 1894, and had been excluded therefrom ever since, without any legal excuse or authority, solely on the ground that they had not been vaccinated with virus, as a preventive of smallpox. The defendants justified said expulsion and prohibition of said children from attending school, for the reason that none of them had presented to the principal or teacher of the school to which they respectively belonged a certificate of a reputable physician that they had been successfully vaccinated with virus, in order to prevent

them from having smallpox, and under and by virtue of a certain rule adopted by the state board of health January 26, 1894, and a modified rule adopted in June, 1894, after the commencement of this proceeding. The rule professed, upon its face, to be made under sec. 1409*b*, S. & B. Ann. Stats., and was as follows, namely:

"Section 1. No child shall be allowed to be enrolled as a pupil in any public, private or parochial school in this state, or to attend any such school as a pupil without first presenting to the principal or teacher of the school in which he or she applies for enrollment or attendance, the certificate of a reputable physician that he or she has been successfully vaccinated."

This rule as amended reads as follows:

"Section 1. No child shall be allowed to be enrolled as a pupil in any public, private or parochial school, without first presenting to the principal or teacher of the school in which he applies for enrollment or attendance, the certificate of a reputable physician, that he has been successfully vaccinated, or in lieu of such certificate of successful vaccination a certificate from a reputable physician that such child has been vaccinated at least twice within a period of three months next preceding the date of such application; such latter certificate, however, shall be void after the expiration of one year from its date.

"Sec. 2. No parent or guardian of any child shall allow such child to attend any public, private or parochial school in this state, and no principal or teacher of any such school shall allow a child to be enrolled as a pupil, or to attend such school, without the evidence of vaccination herein required."

This section, as amended, reads as follows:

"Sec. 2. No parent or guardian of any child shall allow or permit such child to attend any public, private or parochial school in this state, and no principal or teacher of any such

school shall allow a child to be enrolled as a pupil or attend
such school as such, without the evidence of vaccination
herein required, and it is hereby made the duty of the
proper school authorities, in their respective localities, to·
enforce the foregoing rule."

It was alleged in the return, in substance, that said rules
of the state board of health had been transmitted to the de-
fendants, the Beloit school board, with a request that the·
same should be enforced, and that said school board passed
a resolution by which it was provided that the clerk be in-
structed to notify the superintendent of the city schools of
Beloit to require all school children to be vaccinated who·
were so required to be under the order of the state board of
health, or to show successful certificates of vaccination on
or before March 12, 1894, and that notice was given to the
teachers of the public schools, accordingly, that the said
rule must be enforced, etc.; that the relator's children had
never been vaccinated, and he had at all times positively re-
fused to allow them to be vaccinated; and that none of
them had ever produced or presented to any principal or·
teacher of any public school of said city any certificate of
successful vaccination, as required by said rule of said state·
board of health, and which, by order of the Beloit board of
health of February 19, 1894, the superintendent of the city
schools was directed to enforce; and that they were there-
fore excluded from attending public schools.    It was ad-·
mitted that there was not an epidemic of smallpox in said·
city at the time of such exclusion, but it was alleged that
there was great danger of that disease becoming epidemic
in the city, though there was not any case of smallpox in the·
immediate vicinity of the home or schools of said children.

At the trial, before the circuit court for Rock county, that
court found that said rules of January 26th were passed by
the board of health, and a copy thereof transmitted by it to·
C. W. Merriman, superintendent of the public schools of the

city of Beloit, about February 6, 1894; that the schools of said city were public schools, organized and maintained at public expense by a system of taxation for the purpose of furnishing means of education to the resident children of the city of Beloit, Wisconsin, between the ages of four and twenty years, free of charge; that the defendants were then acting as the school board of the city of Beloit, and had in charge the management of said schools, and that on the 19th of February, 1894, they passed a resolution directing the superintendent of the city schools to require all children to be vaccinated, under said order, or to show certificates of successful vaccination on or before March 12, 1894, and that no child who would not comply with the same, and produce the proper certificates of successful vaccination before March 12, 1894, should be allowed to attend any of said schools after that date; that during the said months of January and February, 1894, there was no epidemic of smallpox existing within the state of Wisconsin, but that there were a few cases scattered throughout the state, and that there had been but one case in the city of Beloit, which had been duly and properly quarantined; that the relator was a resident, citizen, and taxpayer of the city of Beloit, and had three minor children, named in the writ, of the proper school age, living with him, and depending upon him for support and education; that they had been attending the public schools of the city of Beloit, in their proper grades, prior to the making of said resolution by the said defendant school board, and did so attend until about the 13th of March, 1894; that said relator refused to allow his children to be vaccinated, and said children refused to be vaccinated, on account of their belief, as Christian Scientists, that the operation or treatment of vaccination was morally wrong, and that the laws of God permit no such operation or treatment, and that to permit it is a breaking of such laws; that said children were of sound bodily health, and entitled to attend

such public school, unless debarred by their refusal to be vaccinated, and they were expelled by reason of such refusal, and thereafter were not allowed to attend school; that in June, 1894, the substitute rule was adopted, and at that time, and at the time of filing the petition, there was no epidemic of smallpox, nor any case of smallpox in or near said city of Beloit; that the board of education had no belief or apprehension that it was prevalent in Beloit, or approaching it; that none of relator's children had been exposed in any manner to any case of smallpox or varioloid; and that there was no immediate, present necessity for a rule compelling scholars to be vaccinated. It was further found that two of relator's children were within the ages prescribed for the compulsory education of children by ch. 187, Laws of 1891.

The court granted a peremptory writ of *mandamus*, as prayed for, and gave a judgment accordingly, and for costs and disbursements against the defendants, from which the defendants appealed.

For the appellants there was a brief by *J. C. Rood*, attorney, and *Ruger & Norcross*, of counsel, and oral argument by *Wm. Ruger*. They argued, *inter alia*, that our statutes, secs. 1407, 1408, R. S., and secs. 1409*b*, 1409*d*, S. & B. Ann. Stats., confer upon the state board of health authority to make such rules as are in question in this case. Those statutes do not delegate legislative power. The powers conferred by them are to be deemed administrative, or at least as within the recognized exceptions to the rule against the delegation of such powers. *Raymond v. Fish*, 51 Conn. 80; 2 Am. & Eng. Ency. of Law, 432–4; *State v. Heinemann*, 80 Wis. 253, 256–8; *Hildreth v. Crawford*, 65 Iowa, 339; *In re Griner*, 16 Wis. 423, 434; *In re Oliver*, 17 id. 681, 686; *Coe v. Schultz*, 47 Barb. 64; *Hurst v. Warner*, 102 Mich. 238; *Minneapolis, St. P. & S. S. M. R. Co. v. Milner*, 57 Fed. Rep. 276, 279; *State ex rel. R. & W. Comm. v. C., M. & St. P. R. Co.* 38 Minn. 281; *Chicago & N. W. R. Co. v. Day*, 35 Fed. Rep.

866, 875; *Filley v. S. F. & W. R. Co.* 5 id. 641, 657–9; *Atl. Exp. Co. v. W. & W. R. Co.* 111 N. C. 463; *Georgia R. & B. Co. v. Smith,* 9 Am. & Eng. R. Cas. 385; *U. S. v. Breen,* 40 Fed. Rep. 402; *People ex rel. Nechamcas v. Warden of City Prison,* 144 N. Y. 529; *Train v. Boston Disinfecting Co.* 144 Mass. 531; *U. S. v. Williams,* 6 Mont. 379; *Wayman v. Southard,* 10 Wheat. 1, 43, 46; *Port Royal Mining Co. v. Hagord,* 30 S. C. 519; *Railroad Comm. Cases,* 116 U. S. 307, 324, 336; *Reagan v. Farmers' L. & T. Co.* 154 id. 362–4, 393–4; *Locke's Appeal,* 72 Pa. St. 491, 498–9. The rules are reasonable and salutary, and are not in conflict with ch. 87, Laws of 1891. *In re Walters,* 84 Hun, 457; *In re Rebenack,* 62 Mo. App. 8; *Bissell v. Davison,* 65 Conn. 183; *Duffield v. Williamsport Sch. Dist.* 162 Pa. St. 476; *Abeel v. Clark,* 84 Cal. 226; *People ex rel. King v. Gallagher,* 93 N. Y. 438, 447. That act excepts children whose physical condition is such as to render school attendance inexpedient.

For the respondent there was a brief by *Fethers, Jeffris, Fifield & Mouat,* and oral argument by *Ogden H. Fethers.* To the point that the legislature cannot delegate the power to make a law, though it may confer some authority or discretion as to the mode of carrying it out, they cited *Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 66; *Hurst v. Warner,* 102 Mich. 238; *Ex parte Cox,* 63 Cal. 21; *Board of Harbor Comm'rs v. Excelsior Redwood Co.* 88 id. 491. The rules adopted by the board would be void, even if made by the legislature itself, because unreasonable and not enacted from necessity. *Kosciusko v. Slomberg,* 68 Miss. 469; *Railroad Co. v. Husen,* 95 U. S. 465; *People ex rel. Copcutt v. Board of Health of Yonkers,* 140 N. Y. 1; *In re Smith,* 146 id. 69; *State v. Speyer,* 67 Vt. 502; *School Directors v. Breen,* 60 Ill. App. 201.

PINNEY, J.   1. The legality of the action of the defendants, constituting the school board of the city of Beloit, in expelling and excluding the relator's three children from the

public schools in that city, which they were and had been respectively attending, and which they had a lawful right to attend, is attempted to be justified by the rule adopted by the state board of health of January 26, 1894, and as modified in June, 1894, after this proceeding had been commenced. The defendants were acting only under the supposed authority of the rule of the state board of health, and this presents the question of the power of the board to adopt and cause such a rule to be enforced. By sec. 1407, R. S., the state board of health is vested with "a general supervision throughout the state of the interests of the health and life of citizens," and directed to make certain *investigations*, and "voluntarily, or when required, advise public boards or officers," in regard to divers matters affecting the public health. By sec. 1408 the board was "to have charge of all matters pertaining to quarantine," and might from time to time "make general or local *rules and regulations* for the preservation or improvement of the public health not inconsistent with law, or those prescribed by *local* authorities pursuant to law," and "all sheriffs, constables, police officers, and all other officers and employees of this state, are required to respect and enforce the same, in every particular affecting their respective localities or duties." By secs. 1409*a*, 1409*b*, S. & B. Ann. Stats., an annual appropriation of $15,000 was made as a contingent fund, which might be used, under the conditions and restrictions of sec. 1409*b*, "to prevent the introduction of Asiatic cholera, smallpox, or other dangerous contagious diseases into this state, or the suppression and control of such disease, if the same shall be found already existent within the state." By sec. 1409*b*, the state board of health, the more effectually to protect the public health, was authorized to establish such systems of inspection as, in its judgment, might be necessary to ascertain the presence of the infection of Asiatic cholera or other dangerous contagious diseases, and to put the

same in force, and might, "from time to time, make, alter, modify, or revoke rules and regulations *for guarding against* the introduction of contagious diseases into the state; for the *control and suppression* thereof, if within the state; for the *quarantine and disinfection* of persons, localities, and things infected, or suspected of being infected, by such diseases;  .  .  .  for the *proper sanitary care* of jails, asylums, school houses,  .  .  .  and the premises connected therewith,  .  .  .  and may declare any or all of its rules in force within the whole state, or within any specified part ·thereof;  .  .  .  and *in general* the state board of health shall have power, and it shall be its duty, *to make such rules and regulations,* and *to take such measures* as may in its judgment be necessary for the protection of the people of the state from Asiatic cholera, *or other dangerous contagious diseases."* By sec. 1409*c* it is provided that "any person who shall neglect or refuse to obey the said rules and regulations, or who shall wilfully obstruct or hinder the execution thereof, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished for each offense by a fine of not less than $25, and not more than $500, or by imprisonment in any county jail for a period of not more than six months, or by both fine and imprisonment, in the discretion of the court."

The police power of the state is relied on to support the rule in question.  This power has been defined in varying language, but of substantially the same general import. "All laws for the protection of life, limb, and health, for the quiet of the person, and for the security of property," fall within the general police power of the government. "All persons and property are subjected to all necessary restraints and burdens, to secure the general comfort, health, and prosperity of the state;" and it has been said that "it is co-extensive with self-protection, and is not inaptly termed 'the law of overruling necessity.'  It is that inherent and

plenary power in the state which enables it to prohibit all things hurtful to the comfort and welfare of society." Tiedeman, Lim. of Police Power, 2–5; Cooley, Const. Lim. 572; REDFIELD, C. J., in *Thorpe v. R. & B. R. Co.* 27 Vt. 140; *Lake View v. Rose Hill Cemetery Co.* 70 Ill. 192; *State v. Noyes*, 47 Me. 189. As the police power imposes restrictions and burdens upon the natural and private rights of individuals, it necessarily depends upon the law for its support; and, although of comprehensive and far-reaching character, it is subject to constitutional restrictions, and, in general, it is the province of the lawmaking power to determine in what cases or upon what conditions this power may be exercised. As applied to the present case, the relator had a right, secured by statutory enactment, to have his children continue to attend the city schools in which they were respectively enrolled as pupils, and they, too, had a right to so attend such schools. Whether it be called a right or privilege cannot be important, for in either view it was secured to the relator, and to his children as well, by the positive provisions of law, and was to be enjoyed upon such terms and under such conditions and restrictions as the lawmaking power, within constitutional limits, might impose.

There is no statute in this state authorizing compulsory vaccination, nor any statute which requires vaccination as one of the conditions of the right or privilege of attending the public schools; and, in the absence of any such statute, we think it cannot be maintained that the rule relied on is a valid exercise of the rightful powers of the state board of health. The state board of health is a creation of the statute, and has only such power as the statute confers. It has no common-law powers. To lawfully exclude the relator's children from the city schools for the cause relied on required such a change in the existing law as the legislature alone could make, a change that should make vaccination of pupils

compulsory, or, at least, prescribe it as a condition of the right or privilege of attending the public schools generally, or during the occurrence of certain emergencies, or upon the happening of certain contingencies or conditions, in respect to the prevalence of smallpox. The powers of the state board of health, though quite general in terms, must be held to be limited to the enforcement of some statute relating to some particular condition or emergency in respect to the public health; and, although they are to be fairly and liberally construed, yet the statute does not, either expressly or by fair implication, authorize the board to enact a rule or regulation which would have the force of a law changing the statute in relation to the admission and the right of pupils of a proper school age to attend the public schools. The state board of health had no legislative power, properly so called, and none could be delegated to it. It is purely an *administrative* body. The powers of the state government are vested in three departments, the legislative, to enact the laws; the executive, to execute them; and the judicial, to declare, construe, and apply them. The constitution (art. IV, sec. 1) declares that "the legislative power shall be vested in a senate and assembly." That no part of the legislative power can be delegated by the legislature to any other department or body is a fundamental principle of constitutional law, essential to the integrity and maintenance of the system of government established by the constitution, and repeatedly recognized and asserted by the courts. In the recent case of *Dowling v. Lancashire Ins. Co.* 92 Wis. 63, we had occasion to examine and apply this principle to an attempt to delegate the power, essentially legislative, to the insurance commissioner, to prepare, approve, and adopt a so-called standard fire insurance policy, the adoption of which would necessarily effect important changes in the law of fire insurance, a delegation of authority which would transfer bodily the legislative power on this subject to the

The State ex rel. Adams vs. Burdge and others.

insurance commissioner. We are satisfied that the conclu-
sions there reached are correct, and sustained by numerous
decisions of the highest courts of the country, some of which
were there cited.

The application of the views there expressed is, we think,
decisive against the validity of the rule under consideration.
The language of the statute (S. & B. Ann. Stats. sec. 1409b) is
very general, and goes to the extent of authorizing the state
board of health "to make such rules and regulations and to
take such measures as may, in its judgment, be necessary for
the protection of the people from Asiatic cholera, or other
dangerous contagious diseases," and by sec. 1409d it is de-
clared that the term "dangerous and contagious diseases," as
used in the act, "shall be construed and understood to mean
such diseases as the state board of health *shall designate
as contagious and dangerous* to the public health." The
provisions of the statute import and include an absolute
delegation of the legislative power over the entire subject
there involved, and this, too, without any previous legislative
provision for compulsory vaccination, or as a condition of
enrollment of children of proper school age as pupils in
the public school, or of their right to attend such schools.
Without any other legislative authority than the right thus
conferred, the state board of health assumed the power
to so far control the public schools of the state as to re-
quire "the proper school authorities in their respective
localities to enforce the rule in question." It cannot be
doubted but that, under appropriate general provisions of
law in relation to the prevention and suppression of danger-
ous and contagious diseases, authority may be conferred by
the legislature upon the state board of health or local boards
to make reasonable rules and regulations for carrying into
effect such general provisions, which will be valid, and may
be enforced accordingly. The making of such rules and
regulations is an administrative function, and not a legis-

lative power, but there must first be some substantive pro-
vision of law to be administered and carried into effect. The
true test and distinction whether a power is strictly legis-
lative, or whether it is administrative, and merely relates to
the execution of the statute law, "is between the delegation
of power to make the law, which necessarily involves a dis-
cretion as to what it shall be, and· conferring authority or
discretion as to its execution, to be exercised under and in
pursuance of the law." The first cannot be done. To the
latter, no valid objection can be made. Per RANNEY, J., in
*Cincinnati, W. & Z. R. Co. v. Comm'rs of Clinton Co.* 1 Ohio
St. 88. The same conclusions substantially were reached
in *Field v. Clark*, 143 U. S. 650, 681, 694. Where an act is
clothed with all the forms of law, and is complete in and of
itself, it may be provided that it shall become operative only
upon some certain act or event, or, in like manner, that its.
operation shall be suspended; and the fact of such act or
event, in either case, may be made to depend upon the ascer-
tainment of it by some other department, body, or officer,
which is essentially an administrative act. There need there-
fore be no delay or embarrassment in such cases, as the legis-
lature may easily so formulate the act as to adapt it, and
make it operative upon any contingency or emergency.
*Locke's Appeal*, 72 Pa. St. 491–498; *Moers v. Reading*, 21
Pa. St. 202; *Blanding v. Burr*, 13 Cal. 358. In the present
instance neither method of legislation was adopted, and the
fatal vice of the rule, in our judgment, is that there was no
precedent or existing law under which it could be framed
and adopted as an adjunct or act of administrative author-
ity, to effectuate its purposes and carry it into effect. *School*
*Directors v. Breen*, 60 Ill.App. 201. The cases of *Abeel v.*
*Clark*, 84 Cal. 226, and *Bissell v. Davison*, 65 Conn. 183, were
sustained by ample legislative authority. In the case of
*Duffield v. Williamsport School Dist.* 162 Pa. St. 476, the
authority to exclude from the schools those who had not been

vaccinated rested upon an ordinance of the city, but whether there was precedent legislative authority does not appear. The making of such rules and regulations, to carry into effect the provisions of an act of strictly legislative authority, as was said in *In re Griner*, 16 Wis. 423, 434, "no more partakes of legislative power than that discretionary authority intrusted to every department of the government in a variety of cases. This practice of giving discretionary power to other departments or agencies, who were intrusted with the duty of carrying into effect some general provisions of law, had its origin at the adoption of the constitution, and in the action of the first congress under it, as the federal legislation abundantly shows. . . .. But a distinction must be made of those important subjects which must be entirely regulated by the legislature itself from those of less interest in which a general provision may be made. . . . The line has not been exactly drawn which separates those important subjects which must be entirely regulated by the legislature itself from those of less interest in which a general provision may be made, and power given to those who are to act under such general provision to fill up the details." It not unfrequently occurs that provisions are found in legislative enactments which might well have been determined and regulated by some board or body having administrative powers, but it is safe to say, we think, that, where the provision in question lies strictly and solely within the domain of legislative authority, in all such cases there can be no delegation of the power to enact it. Our conclusion is that the rule under consideration could be made operative only as an act of legislative power, and it does not come within the domain of the power to make rules and regulations in aid or execution of some general statutory provision. This view is illustrated by reference to certain of the general provisions contained in sec. 1409*b*, yet of a sufficiently definite character, so that the state board of health, as an ad-

ministrative body, might be authorized to adopt reasonable rules and regulations to carry them into effect. As to the matter of inspections authorized by the act, to ascertain the presence of the infection of Asiatic cholera or other dangerous and contagious diseases, and the power conferred on the inspector to enter any building, vessel, railway car, etc., as well as the quarantine authorized by sec. 1409, the power of the state board of health to make appropriate rules and regulations to effectuate the general purposes thus declared would seem to be free from doubt. *Hurst v. Warner*, 26 L. R. A. 484, 489, 492, 102 Mich. 238; *Train v. Boston Disinfecting Co.* 144 Mass. 523–531; *Health Dept. v. Knoll*, 70 N. Y. 535.

2. The circuit court held that the rule in question was unreasonable, and therefore void; and, had the state board of health possessed the power to make the rule, we agree it would have been void for that reason. The rule was an unreasonable and extraordinary one, and serves to enforce the importance and necessity of a strict adherence to the constitutional rule, that the power to make the law cannot be delegated to any board or body not directly responsible to the people. When the rule in its original form was adopted, there was no epidemic of smallpox existing in the state, but there were a few cases scattered throughout the state. There had been but one case in Beloit, which had been properly quarantined; and when the substituted rule was adopted in June, 1894, as well as when this proceeding was instituted, there was no epidemic of smallpox in or near the city of Beloit, or approaching it, and the defendant board of education had no belief or apprehension that it was prevalent in Beloit or approaching it. None of the relator's children had been exposed to it or varioloid, and there was no immediate necessity for the rule requiring scholars to be vaccinated. All these facts are established by the findings of the court, the correctness of which was not questioned at the argument;

and yet, by an arbitrary rule, as by a single stroke of the pen, every child of school age, throughout the entire state, that had not been vaccinated, was excluded from the common schools, and forbidden to be enrolled as a pupil, or to attend school, without a certificate of successful vaccination from a reputable physician, or, in lieu thereof, a certificate showing that such child had been vaccinated twice within a period of three months next preceding its application for admission.

There must be, at least, circumstances apparently rendering such a rule or regulation necessary for the preservation of the public health. It would be a very extraordinary condition that would justify such a sweeping and far-reaching exercise of the power to make a rule of the character of the one in question either justifiable or proper, as the statute provides for making rules and regulations of local application only. Whether rules and regulations framed by an administrative body are reasonable or not is a question that may be determined in the courts, and, were there no other question in regard to the validity of this rule, we should feel compelled to declare it void as unreasonable and unnecessary. *Kosciusko v. Slomberg*, 68 Miss. 469; *In re Smith*, 146 N. Y. 68; *School Directors v. Breen*, 60 Ill. App. 201–208.

The question as to the validity of legislation making vaccination of children attending school compulsory is not presented by the record, and in respect to it we express no opinion. Two of the relator's children, affected by the rule of exclusion, are within the age prescribed for compulsory education of children by ch. 187, Laws of 1891; but, as this objection may be obviated by subsequent legislation, there is no occasion now to express any opinion in respect to it.

It follows from these views that the judgment of the circuit court is correct.

*By the Court.*— The judgment of the circuit court is affirmed.