WALDSCHMIT et al. v. CITY OF NEW BRAUNFELS et al. (No. 5829.)

(Court of Civil Appeals of Texas. Austin. Feb. 7, 1917. Rehearing Denied March 14, 1917.)

1. HEALTH ⬡⟹20—POLICE POWER.

The state, through its Legislature, may, in the exercise of its police power, enact all reasonable legislation for the promotion of public welfare, including the preservation of health.

[Ed. Note.—For other cases, see Health, Cent. Dig. § 24.]

2. CONSTITUTIONAL LAW ⬡⟹70(3)—SEPARATION OF POWERS—PROVINCE OF COURTS.

The reasonableness of statutes enacted under the police power is primarily a question for the Legislature, and will be reviewed by the courts only in clear cases of abuse.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 131.]

3. MUNICIPAL CORPORATIONS ⬡⟹57—POWERS OF—ORDINANCE.

Municipal corporations are creatures of statute, and have no power, excepting those expressly or impliedly granted by the statute creating them.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 144, 148.]

4. MUNICIPAL CORPORATIONS ⬡⟹58—POWERS OF—CONSTRUCTION.

Notwithstanding Final Title, § 3, of Rev. St. 1911, declares that the powers of municipalities are to be liberally construed with the view to effect their objects, the power of a municipality to enact an ordinance is to be strictly construed, especially where its object may work a deprivation of the citizens of life, liberty, property, privileges, or immunities.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 145–147.]

5. MUNICIPAL CORPORATIONS ⬡⟹58—POWERS OF—PRESUMPTIONS.

In determining whether a power has been granted to a municipality, the presumption is against the grant, but in determining whether it is properly exercising the power the presumption is in favor of propriety, and to enjoin such exercise it must appear that the corporation is abusing its discretion.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 145–147.]

6. SCHOOLS AND SCHOOL DISTRICTS ⬡⟹158(1) — HEALTH REGULATIONS — VACCINATION — "POLICE POWER."

Rev. St. 1911, art. 838, declares that municipalities shall have power to do all acts and make all regulations which may be necessary or expedient for the promotion of health and the suppression of disease. A municipal corporation without express authority enacted an ordinance declaring that no child or other person should be permitted to attend any of the public schools or any place of education, unless such child or person present a certificate from a duly qualified physician that such child or person has been successfully vaccinated within six years preceding the time which such child or other person desires to attend school, and that any person sending or attempting to send a child to any school or place of education without having been vaccinated, and any person admitting any child to attend school without a certificate of vaccination, shall be guilty of a misdemeanor. The ordinance further recited that the public health demanded its immediate passage, and an emergency was declared. At the time of the enactment of the ordinance there was quite an epidemic of smallpox in the municipality, but it abated, and thereafter appellant, a Christian Scientist, attempted to send his children to school without having them vaccinated. Acts 34th Leg. c. 49, providing for compulsory education, makes the failure of parents to send their children to school a misdemeanor. Held, that as the vaccination ordinance was practically compulsory, exposing a parent to prosecution in event of failure, either because he did not send his children to school or because he sent them without vaccination, it cannot be sustained under the police power which is defined as the law of overruling necessity inherent in the people or their government, for the powers of a municipality are strictly circumscribed, and if the Legislature intended to confer such broad police power on municipalities, it must be presumed that they would have done so expressly; this being particularly true, as there is much controversy over the efficacy of vaccination.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 329.

For other definitions, see Words and Phrases, First and Second Series, Police Power.]

7. SCHOOLS AND SCHOOL DISTRICTS ⬡⟹158(1) — HEALTH REGULATIONS — VACCINATION — "POLICE POWER."

In such case, the ordinance cannot be sustained after the abatement of the epidemic on the ground that there were Mexicans in the vicinity who were subject to and carriers of smallpox, for such ordinances can be sustained only in case of active epidemics.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 329.]

Appeal from District Court, Comal County; Frank S. Roberts, Judge.

Proceedings between Fritz Waldschmit and others and the City of New Braunfels and others. From a judgment for the latter, the former appeals. Reversed and rendered.

Adolph Seidemann, of New Braunfels, for appellants. Henne & Fuchs and J. R. Fuchs, all of New Braunfels, for appellees.

### Findings of Fact.

JENKINS, J. 1. The city of New Braunfels is a municipal corporation, incorporated under the general laws of this state, title 22, chapter 1, of the Revised Statutes.

2. It is also an independent school district, with a board of school trustees, who have general management and control of its schools under the laws of this state.

3. The individual appellees herein are respectively the mayor, the city attorney, the city marshal of said city, and the superintendent of said schools.

4. The appellant Fritz Waldschmit is and for many years has been a resident citizen and taxpayer of New Braunfels; appellants Sido, aged 14, and Else, aged 11, are the children of Fritz Waldschmit, and live with their father.

5. The city of New Braunfels levies and collects annually a special school tax of 40 cents on the hundred dollars on all property in that city subject to taxation.

6. On September 18, 1916, and for a short time prior and subsequent thereto, smallpox prevailed in epidemic form in New Braunfels, there being in all 32 cases.

7. On September 18, 1916, the city council

of New Braunfels adopted the following ordinance:

"An ordinance requiring vaccination certificate for admittance to schools.

"Be it ordained by the city council of the city of New Braunfels:

"Section 1. No child or other person shall be permitted to attend any of the public schools or any place of education within this city, unless such child or other person shall first present a certificate from some duly qualified physician to the city physician that such child or other person has been successfully vaccinated within six years preceding the time at which such child or other person desired to attend school; such certificate shall give a description of such child or person, age and nationality and kind of virus used, and such other information as the city physician may require, for which purpose the city physician shall furnish blanks to all persons requiring the same.

"Sec. 2. The city physician or his assistant shall give a certificate of such vaccination, or certify to the correctness of such certificate, such certified certificate, shall be presented to the superintendent, principal or teacher of the school at which such child or person seeks to be admitted, before admission.

"Sec. 3. Any person sending or attempting to send a child to any school or place of education within the city without having it vaccinated in accordance with the provisions of this ordinance, and any physician giving a false certificate, and all persons admitting any child or other person to attendance in any such school or place of education without such certificate of vaccination, shall be guilty of a misdemeanor, and upon conviction therefor before the recorder shall be fined in any sum not less than ten dollars ($10.-00) nor more than one hundred ($100.00) dollars for such offense, and each day such offense continues shall be deemed a separate offense.

"Sec. 4. Public health demands the immediate passage of this ordinance and an emergency is hereby declared, and this ordinance is placed upon its first and final reading, and it shall be in force and effect from and after its passage and publication for the required time."

8. On September 5, 1916, the school trustees of New Braunfels, in order to prevent the spread of smallpox, closed the public schools of that city, and kept them closed until October 20, 1916, at which time they were reopened, and have since been kept open.

9. On September 5, 1916, the said school board passed a resolution that school children should not be required to be vaccinated before being permitted to attend the public schools; and on October 17, 1916, refused to rescind said order.

10. There has been no case of smallpox in any of the schools of New Braunfels; that is to say, no one has had the smallpox while attending any of said schools.

11. The city of New Braunfels and the superintendent of its public schools have enforced the ordinance herein set out since its passage to the date of the trial hereof, and will continue to do so, unless restrained by an order of a court of competent jurisdiction.

12. On October 20, 1916, Fritz Waldschmit sent his daughter Else to a public school in New Braunfels, with a written request that she be permitted to attend same, which request the superintendent of said school, acting under the direction of the city health officer, refused in writing to grant.

13. The said children of Fritz Waldschmit have never been exposed to smallpox, but have at all times since the reopening of said school been in good health, and no reason exists for excluding them from school, except that they have never been vaccinated.

14. The father of said children has not permitted them to be vaccinated for the reason he is a Christian Scientist, and does not believe in vaccination as a preventive of smallpox, but, on the contrary, conscientiously believes that it would be morally wrong to permit his children to be vaccinated. Said children are also Christian Scientists, and entertain the same belief.

15. Smallpox did not exist in epidemic form at the time of the trial hereof, and there were no reasonable grounds for fearing that such an epidemic was then threatened in New Braunfels.

### Opinion.

[1, 2] That the state, through its Legislature, may, in the exercise of its police power, enact all reasonable legislation for the promotion of the public welfare, including the preservation of health, is too well settled to require the citation of authorities. Also that the reasonableness of such measures is primarily a question for the Legislature, and will be reviewed by the courts only in clear cases of abuse of such power, is equally well settled. In reference to this rule, as applied to vaccination, courts have frequently said that they were not called upon to decide whether or not vaccination was a preventive of smallpox, but only whether the Legislature which enacted such legislation had reason to so believe.

[3] But the rule is quite different where local authorities have undertaken to pass rules or ordinances with reference to vaccination, without being expressly authorized so to do. Municipal corporations are the creatures of statute, and have no powers, except those expressly or impliedly granted by the statute creating them. Pye v. Peterson, 45 Tex. 314, 23 Am. Rep. 608; Davis v. Burney, 58 Tex. 367; Railway Co. v. Galveston, 90 Tex. 411, 39 S. W. 96, 36 L. R. A. 33; Vosburg v. McCrary, 77 Tex. 572, 14 S. W. 195.

[4] The powers granted to municipal corporations are strictly construed. Bayha v. Carter, 26 S. W. 138; Cleburne v. Railway Co., 66 Tex. 461, 1 S. W. 342; Brenham v. Waterworks Co., 67 Tex. 553-564, 4 S. W. 143; Pye v. Peterson, supra. It is true that the final title of our Revised Statutes, section 3, says that they are to be liberally construed "with a view to effect their objects." But that object ought never to be presumed to be to deprive a citizen of his constitutional right of "life, liberty, property, privileges or immunities," unless it be expressly or by necessary implication so declared. In Re

Smith, 146 N. Y. 77, 40 N. E. 499, 28 L. R. A. 824, 48 Am. St. Rep. 769, the court in denying right to quarantine one who had not been vaccinated said:

"Like all enactments which may affect the liberty of the person, this one must be construed strictly."

The ordinance involved in the instant case affects the liberty of Fritz Waldschmit, inasmuch as if he did not pay the fines assessed against him for its violation the city could imprison him.

[5, 6] The Legislature of Texas has never enacted a law to exclude any one from school who has not been vaccinated, nor has it expressly authorized any city council, board of school trustees, or even the state board of health, composed as it is of eminent physicians, to do so. If the city of New Braunfels had the power to pass the ordinance set out in our findings of fact, such power is to be implied from article 838 R. S., which reads as follows:

"To do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease."

In Cleburne v. Railway Co., supra, the court said:

"A power will be implied only when without its exercise an express duty or authority would be nugatory."

Certainly, in view of the many things that city councils are expressly authorized to do for "the promotion of health and the suppression of disease," their power in this regard would not be nugatory, and they would not to be wholly unable to discharge such duty by being denied the right to enforce vaccination as to school children. Among the powers expressly conferred upon city councils to enable them to protect the public health may be mentioned to make and enforce quarantine regulations; to isolate those who have contagious diseases, or have been exposed thereto; to established hospitals and pesthouses; to inspect provisions; to regulate butchers; to abate nuisances; to require all premises to be kept clean, and privies, sinks, and drains to be kept in a sanitary condition; to locate slaughterhouses, tanneries, etc.; to prevent dead animals from being left in the city, and many other things. In Morris v. Columbus, 102 Ga. 802, 30 S. E. 854, 42 L. R. A. 180, 66 Am. St. Rep. 243, the court said:

"Municipal corporations must have express authority (to require vaccinations) from the Legislature, as no such power will ever arise by implication."

In People ex rel. Jenkins v. Board of Education, 234 Ill. 422, 84 N. E. 1046, 17 L. R. A. (N. S.) 712, 14 Ann. Cas. 943, which involved the validity of an ordinance excluding from school children who had not been vaccinated, the court said:

"If the city of Chicago has power to pass any ordinance on the subject, the power is derived from the authority conferred upon the city council to appoint a board of health and prescribe its powers and duties *to do all acts and make*

*all regulations which may be necessary or expedient for the protection of health or the suppression of disease* (italics ours), * * * and to make all regulations proper or necessary to carry into effect such authority. * * * The general police powers above enumerated to pass ordinances and make regulations for the promotion of health or the suppression of disease do not include the passage of such an ordinance as this, which makes vaccination a condition precedent to the right to an education."

It will be observed that the words italicized in the foregoing excerpt is the exact language of article 838, R. S., supra, except in lieu of the word "promotion" in said article; the Illinois statute used the stronger word "protection."

The statute of Wisconsin created a state board of health, conferring upon it general authority in matters of health, among other things, to make rules "to prevent the introduction of Asiatic cholera, smallpox, and other dangerous contagious diseases into the state, or for the suppression and control of such diseases, if the same shall be found already extant within the state." Under this authority it was attempted to prevent children from attending school without first being vaccinated. In Adams v. Burdge, 95 Wis. 390, 399, 70 N. W. 347, 349 (37 L. R. A. 157–160, 60 Am. St. Rep. 123), the court said:

"There is no statute in this state authorizing compulsory vaccination, nor any statute which requires vaccination as one of the conditions of the right or privilege of attending the public schools; and, in the absence of any such statute, we think it cannot be maintained that the rule relied upon is a valid exercise of the rightful powers of the state board."

A statute of Michigan conferred upon school boards the general management and control of public schools, among other things, "to determine the age and qualifications for admission therein." The city of Kalamazoo adopted an ordinance requiring vaccination as a prerequisite to attendance upon the public schools of that city. In Mathews v. Board of Education, 127 Mich. 538, 86 N. W. 1040, 54 L. R. A. 737, 738, the court said:

"The board of education is a creature of the statute. It possesses only such power as the statute gives it. The Legislature has said who may and should attend the public schools. It has nowhere undertaken to confer the power upon the school board to change these conditions by passing a general, continuing rule excluding children from the public schools until they comply with conditions not imposed upon them by the legislative branch of the government."

The statute of the state of Illinois conferred upon the board of health of that state general powers in reference to health, as broad as those conferred upon cities and towns in this state. In Potts v. Breen, 167 Ill. 67, 47 N. E. 81, 39 L. R. A. 152, 59 Am. St. Rep. 262, the court said:

"It is clear that no such power as claimed by the board of health has been conferred upon it, unless by the broad and general language of the first section of the act creating it. But the general terms there employed must be construed in relation to the more specific duties imposed and powers conferred by the act taken as a whole, and when thus construed these general

terms are restricted so as to express the true intent * * * of the Legislature."

Applying this rule of construction which we think is correct, to article 838, it means only that city councils may "do all acts and make all regulations which may be necessary or expedient" to carry into effect the powers expressly granted them "for the promotion of health or the suppression of disease." Anything that they might do in attempting to carry into execution the powers expressly granted would be sustained by the courts, unless it was clearly shown to be unreasonable. As, for instance, the location of a slaughterhouse or a cemetery, or the length of time one should be isolated who had the smallpox, or other contagious disease.

In determining whether or not a power has been granted to a municipal corporation, the presumption is against such corporation, but in determining whether or not it is properly exercising a granted power, the presumption is in favor of such corporation, and to enjoin it from so doing, it must be made to clearly appear that it is abusing its discretion.

As pertinent to the inquiry as to whether the Legislature intended by article 838, supra, to confer upon city councils the power to exclude from public schools children who had not been vaccinated, we think the following facts should be considered: It knew that for more than 100 years vaccination had been practiced as a preventive of smallpox; that a majority of physicians and a majority of people believe in its efficacy; that, on the other hand, some physicians do not believe in or practice vaccination; that many people do not believe in it, but, on the contrary, believe that vaccine virus is a poison dangerous to health and even to life. The Legislature, which in this state is always composed in part of learned lawyers, may fairly be presumed to have known that some courts of last resort in this country had held that city councils, in the absence of express authority, had no power to require vaccination as a prerequisite to attendance upon schools. With these facts before them, it does seem that if the Legislature had intended to confer upon city councils the right to change the qualification which it prescribed for attendance on public schools, it would have said so in plain language, and not left it to doubtful implication.

We think there is another reason, and a cogent one, why it should not be held in this state that city councils have implied authority to exclude from public schools all who have not been vaccinated. It is this: The Thirty-Fourth Legislature (Gen. Laws 1915, pp. 92–98) passed a compulsory education law, applicable to children from 11 to 14 years of age, which provides that any one who fails to send his child to school as therein provided shall be deemed guilty of a misdemeanor, and fined for the first offense $5,

for the second offense $10, and for each subsequent offense $25. Each day's failure constitutes a separate offense. A number of exemptions and excuses are provided for in the act, among which is quarantine, but failure to have been vaccinated is not one of them.

The learned editor of L. R. A. in a note to Jenkins v. Board of Education, supra, says:

"No American case can be found which holds that compulsory vaccination may be required in the sense of compelling one to submit his person thereto."

But it is apparent that to enforce the fines and penalties for failure to comply with the compulsory education law, if vaccination may legally be required as a prerequisite to school attendance, amounts, in effect, to compulsory vaccination. If in the instant case Fritz Waldschmit fails to send his child Else to school, he is subject to a fine of $25 a day. Failure to have his child vaccinated is no defense, if the city council of New Braunfels has the legal right to require such vaccination as a prerequisite to school attendance. On the other hand, if he attempt to comply with the state law by attempting to send his child to school without first having her vaccinated, he will be fined $100 a day for each day that he does so. Thus he would be forced to have his child vaccinated under penalty of being pauperized by fines and being sent to prison for failure to pay them.

The police power of the state has been aptly termed "the law of overruling necessity." Morris v. Columbus, 102 Ga. 797, 30 S. E. 852, 42 L. R. A. 178, 66 Am. St. Rep. 243. In Blue v. Beach, 155 Ind. 130, 56 N. E. 92, 50 L. R. A. 68, 80 Am. St. Rep. 195, the court said:

"The right to exercise this power is said to be inherent in the people in every free government. It is not a grant * * * from * * * any written Constitution. It is not, however, without limitation, and it cannot be invoked so as to invade the fundamental rights of the citizen."

Religious liberty is a fundamental right, not derived from, but protected by, the Constitution. It appears from the record in this case that Christian Science is a religion, with more than 1,000,000 adherents in the United States, and that one of its tenets is that vaccination is morally wrong. That the state may disregard religious opinions when necessary so to do to protect morals is the effect of the decisions in reference to polygamy as taught by the Mormon church. Whether or not this would apply to compulsory vaccination, we are not called upon to decide. The state has not attempted, either directly or indirectly, to compel any one to be vaccinated, nor has it authorized any municipal corporation in this state to do so.

In some cases it has been held that municipal corporations have the implied power to exclude children from school who have not been vaccinated as an emergency measure for

the protection of health, on account of the existence or threatened invasion of smallpox in epidemic form. This doctrine must find its basis, if at all, in the application of the doctrine of "overruling necessity" to municipal corporations. But this distinction should be kept in mind: The state is the people, and their representatives, the Legislature, possess all political power not denied them by the Constitution, while a municipal corporation is the creature of the state, and possesses only such power as is expressly or impliedly granted by the statute creating it. How far the doctrine of necessary self-defense might apply to a municipal corporation, where the statute grants it no means of protecting the health of its citizens, need not here be considered, for the state has granted to municipal corporations in this state the power to do many things for the protection of health, and presumably all that the Legislature thought necessary to permit them to do.

To say the least of it, there is danger of this doctrine of implied authority arising from the supposed exigencies, being applied when there is no necessity for so doing. By way of illustration, in the Zucht Case, 170 S. W. 840, the court said:

"If the school board can keep out children afflicted with contagious diseases, and those who have been exposed to the contagion, without coming in conflict with the Constitution and said statutes, it also has the power to keep out those who fail to comply with other regulations reasonably necessary to protect the health of those attending the schools."

The charter of the city of San Antonio expressly authorized it to keep out of its schools "children affected with contagious diseases, and those who had been exposed to contagion," by quarantining or isolating such children until all danger of infection had passed. It does not follow because a city may adopt and enforce ordinances expressly authorized by statute that it therefore has the implied power to do some other thing which the statute has not expressly authorized it to do.

[7] If, however, it be conceded that the city of New Braunfels had implied authority to pass and enforce the ordinance in question at the time of its passage, such authority arose from the prevalence of smallpox in that city in epidemic form, or its threatened invasion at that time. Courts so holding limit such authority to the continuance of the emergency. Zucht v. San Antonio; Blue v. Beach; Potts v. Breen; People v. Jenkins, supra; Cox v. Board of Education, 21 Utah, 401, 60 Pac. 1017; Lawbaugh v. Board of Education, 177 Ill. 572, 52 N. E. 850; Adams v. Burdge, 95 Wis. 390, 70 N. W. 347, 37 L. R. A. 162, 60 Am. St. Rep. 123. In the Zucht Case, supra, the court said:

"Ordinances and regulations which are valid when measured by existing conditions become unenforceable when such conditions cease."

That this is the practical construction given to this decision by the authorities in San Antonio is indicated by the fact that appellant Fritz Waldschmit testified without objection that Dr. Zucht had recently told him that his children had been readmitted to the public schools of San Antonio without being vaccinated. "The order made has no effect beyond the existence of the emergency." Cox v. Board of Education, supra.

So the question here is: What was the condition in regard to smallpox in New Braunfels when this case was tried? The undisputed testimony showed that there was then but one case of smallpox in that city, and that it was isolated and practically convalescent. That conditions had improved, and the extent of such improvement since the passage of the ordinance (September 18, 1916), is shown by the following testimony adduced on the trial of this case: On October 6, 1916, there was published in a local paper in New Braunfels the following:

#### "To the Public.

"In view of the numerous, erroneous, false and exaggerated reports circulated with reference to the smallpox situation in New Braunfels, a meeting of citizens was held at the courthouse on Monday, October 2d; at this meeting this committee was appointed to investigate and report upon the true condition of affairs as now exists here. This committee begs herewith to submit the following report of the mayor, health officer and practicing physicians of the city of New Braunfels:

"'To the Public: We, the undersigned mayor, health officer and practicing physicians of the city of New Braunfels, hereby certify that at the present time there are only fifteen cases of smallpox within the city limits of New Braunfels; all of these cases are under proper medical supervision and strict quarantine, and consequently cannot and do not endanger the public. Chas. Alves, Mayor; A. Garwood, M. D., City Health Officer; L. G. Wille, M. D.; W. M. Barron, M. D.; A. J. Hinman, M. D.; M. C. Hagler, M. D.; A. D. Noster, M. D.; R. Wright, M. D.'

"The undersigned committee regrets the spreading of so many exaggerated and unjust reports, and while we are unwilling to believe that they were made for any selfish or malicious purpose, yet in view of the fact that such statements are entirely unwarranted, we feel it our duty to correct them and state the real facts, and therefore indorse the above report as being true and correct in every particular, and assure the public that it shall have the truth from this committee at all times. H. G. Henne, S. V. Pfeuffer, R. H. Wagenfuehr, Committee."

On October 12, 1916, there was published in a local paper in said city the following:

"City Health Officer, Dr. A. Garwood, hands us the following communication: There are only three cases of smallpox in the city, and three in Comal Town; in a few days, if due precautions are taken in behalf of the recovered patients, the quarantine of the disinfected homes will be raised.

"[Signed]        Mayor and City Health Officer.

"The city health officer says that the schools can be opened without any danger, but as there are so many children recently vaccinated and show scabs on their arms, due to vaccination, the school board has decided to wait a little and to discuss next Tuesday evening the reopening of the schools. The motion picture shows which had been closed as precautionary measures against spreading of smallpox are now again open and in full swing."

There was also published on October 13, 1916, in a newspaper in said city, the following:

"There are three remaining cases of smallpox in town and three in Comal Town. After a few days of precautionary after-treatment of the recovered cases, all quarantine restrictions will be removed from the formerly infected homes.

"[Signed] Mayor and City Health Officer."

It was further shown the picture shows in New Braunfels which had been temporarily closed had been reopened and were "in full swing," and that no restrictions were being imposed upon people attending Sunday school, church, and social gatherings. The mayor and the city health officer authorized these publications, and the facts therein stated were not controverted.

We do not regard the testimony as to a portion of the population of New Braunfels being Mexican, and the frequent occurrence of smallpox in San Antonio, 28 miles distant, as entitled to any weight upon the issue as to the right to enforce the ordinance in question at the time of the trial hereof. If these things would have justified such action at the time of this trial, they would justify it for all future time, though there may never have been another case of smallpox in New Braunfels. The city of New Braunfels had ample authority to enforce sanitary measures among the Mexicans, to isolate any of them who might have the smallpox, to send them to the pest camp, if necessary, and to quarantine against San Antonio, should occasion for doing so arise. In Jenkins v. Board of Education, supra, the court said:

"There is nothing in the nature of an emergency in the occasional recurrence of the well-known disease of smallpox in a city like Chicago which may not be provided for by general rules and regulations prescribed by the legislative authority of the city."

We do not think that there is anything in the fact that Mexicans live in San Marcos, nor in conditions that may arise in San Antonio that cannot be dealt with under the legislative authority expressly granted to the city of New Braunfels, without practically enforcing compulsory vaccination as to school children.

For the reasons stated, we hold that the trial court erred in not granting the appellants the relief sought, and the judgment of said court is reversed and here rendered that the appellees be enjoined from excluding the children of Fritz Waldschmit from the public schools of New Braunfels, and that the superintendent of said school be required to admit said children to said school.

Reversed and rendered.